UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| SADDLEBACK EXPLORATION, LLC, §<br>    *Interpleader-Plaintiff*, §<br>§<br>v. §<br>§<br>BARBARA BRUNELLE, ET AL., §<br>    *Interpleader-Defendants*. § | CIVIL ACTION NO. 4:23-CV-03091 |

## MEMORANDUM AND RECOMMENDATION

Before the Court are Remnant Assets, LLC's ("Remnant's") Motion for Summary Judgment (ECF 105) and the Motion for Summary Judgment by Counter-Plaintiff-Interpleader-Defendant Gary D. Pickens, Trustee for the Hart Revocable Trust ("Hart") (ECF 112). Interpleader Defendants M&M Minerals, LLC and TK3 Minerals, LLC ("M&M & TK3") filed a Response (ECF 113), as did Grimes 710 LLC, Grimes Texas, LLC and Matthews-Link Properties, Ltd. ("Grimes") and Fredda T. Durham Lifetime Trust ("FTDLT"). ECF 114; ECF 115. In addition, the Court heard summary judgment arguments from counsel for several Interpleader-Defendants at a status conference held telephonically on June 18, 2024. *See* ECF 121; ECF 122. Following the conference, Hart and Remnant each filed a proposed order addressing the Motions for Summary Judgment. ECF 124; ECF 125. Grimes and FTDLT filed a Response to the proposed orders (ECF 126), which was joined by M&M & TK3 (ECF 127).

Having reviewed the Motions for Summary Judgment, the Responses, the

arguments of counsel and the applicable law, the Court recommends partially granting and partially denying Remnant's and Hart's Motions for Summary Judgment for the reasons explained below.  ECF 105; ECF 112.

## I. Background.

This case involves a dispute over the royalties to be paid to royalty owners based on production from the Stonegate 6 No. 1H Well ("6-1H Well").  Interpleader-Plaintiff Saddleback Exploration, LLC ("Saddleback") is the Operator of the well and owner of the Lease covering approximately 482.5 acres of land in Winkler County, Texas.  Saddleback "acknowledges that it owes royalties from the production of the 6-1H Well" but "because of potential conflicting claims by Defendants as to the royalty amounts, Saddleback is uncertain as to whom it should pay such royalties."  ECF 1, 7 at ¶ 2.  Saddleback filed this statutory interpleader suit seeking to resolve the question of what percentages of production it should pay to royalty interest owners under various oil and gas leases.  ECF 1,7 at ¶¶ 1-2.  The Interpleader action names over three hundred Interpleader-Defendants—some of whom have since been dismissed (ECF 98; ECF 107); some of whom have not been located or served; and some of whom have not entered an appearance in the case. Remnant and Hart each move for a summary judgment order that, among other things, provides a legal interpretation of six separate royalty deeds executed in 1929. Remnant and Hart argue in their respective motions that Texas law requires the six

deeds, which transfer "double fraction" interests (e.g., "one sixty-fourth of the landowner's one-eighth royalty interest"), to be interpreted as assigning a "floating" royalty interest as opposed to a "fixed" royalty interest.[1] No Interpleader-Defendant who has appeared in the case disputes Remnant's and Hart's position that the six deeds convey "floating royalty interests."

## II.     Legal Standards.

### A. Summary Judgment standards.

Summary judgment is appropriate if no genuine issues of material fact exist, and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). The party moving for summary judgment bears the initial burden to prove there are no genuine issues of material fact for trial. *Provident Life & Accident Ins. Co. v. Goel*, 274 F.3d 984, 991 (5th Cir. 2001). The court construes the evidence in the light most favorable to the nonmoving party and draws all reasonable inferences in that party's favor. *R.L. Inv. Prop., LLC v. Hamm*, 715 F.3d 145, 149 (5th Cir. 2013). In ruling on a motion for summary judgment the Court does not "weigh evidence, assess credibility, or determine the most reasonable inference to be drawn from the evidence." *Honore v. Douglas*, 833 F.2d 565, 567 (5th Cir. 1987). However, "[c]onclus[ory] allegations and denials, speculation, improbable

---

[1] A "floating" royalty interest varies as the royalty of the landowner changes. A "fixed" royalty interest remains at the same percentage even if the landowner's royalty changes. *Van Dyke v. Navigator Group*, 668 S.W.3d 353 (Tex. 2023), *reh'g denied* (June 16, 2023); *Hysaw v. Dawkins*, 483 S.W.3d 1, 1 (Tex. 2016).

inferences, unsubstantiated assertions, and legalistic argumentation do not adequately substitute for specific facts showing a genuine issue for trial." *U.S. ex rel. Farmer v. City of Houston*, 523 F.3d 333, 337 (5th Cir. 2008) (citation omitted).

### B. Standards of contract interpretation.

When interpreting a contract or deed, the court's task is to "ascertain the true intentions of the parties as expressed in the writing itself." *Italian Cowboy Partners, Ltd. v. Prudential Ins. Co. of Am.*, 341 S.W.3d 323, 333 (Tex. 2011); *Van Dyke v. Navigator Grp.*, 668 S.W.3d 353, 361 (Tex. 2023), *reh'g denied* (June 16, 2023). This analysis begins with the contract's express language. *Italian Cowboy*, 341 S.W.3d at 333. Courts "give terms their plain, ordinary, and generally accepted meaning unless the instrument shows that the parties used them in a technical or different sense." *Heritage Res., Inc. v. NationsBank*, 939 S.W.2d 118, 121 (Tex. 1996). Courts "examine and consider the entire writing in an effort to harmonize and give effect to all the provisions of the contract so that none will be rendered meaningless." *Seagull Energy E & P, Inc. v. Eland Energy, Inc.*, 207 S.W.3d 342, 345 (Tex. 2006) (quoting *Coker v. Coker*, 650 S.W.2d 391, 393 (Tex. 1983)) (emphasis omitted). Each provision must be considered in the context of the contract as a whole. *Pathfinder Oil & Gas, Inc. v. Great W. Drilling, Ltd.*, 574 S.W.3d 882, 889 (Tex. 2019). A written instrument that can be given a certain or definite legal

meaning or interpretation is not ambiguous and will be construed as matter of law. *Id.*

### III. Analysis.

The six deeds executed in 1929 and attached to Remnant's Motion for Summary Judgment assign "double-fraction" non-participating royalty interests. ECF 105-1 at 1-10 and ECF 125-1[2] at 1-11 (conveying in each of six deeds various fractions of "the landowner's one-eighth interest in and to all of the oil, gas and other minerals in and under and that may be produced from the . . . described lands in Winkler County[.]"). According to Remnant's Motion for Summary Judgment, when dealing with "antique" deeds, two cases decided by the Texas Supreme Court provide the proper methodology for interpreting "double-fraction" language like that found in the six deeds at issue here. ECF 105 at 2-3 (citing *Van Dyke v. Navigator Grp.*, 668 S.W.3d 353 (Tex. 2023) and *Hysaw v. Dawkins*, 483 S.W.3d 1 (Tex. 2016)).

In *Van Dyke* the Texas Supreme Court affirmed its holding in *Hysaw* that "[a]ntiquated instruments that use 1/8 within a double fraction raise a presumption that 1/8 was used as a term of art to refer to the 'mineral estate.'" *Van Dyke*, 668 S.W.3d at 359. The Texas Supreme Court further explained:

> We now reaffirm *Hysaw* and clarify the import of our holding in that case. Specifically, when courts confront a double fraction involving 1/8

---

[2] Remnant's Post MSJ Hearing Supplement attaching corrected Exhibit 105-1, pages 003-011.

5

> in an instrument, the logic of our analysis in *Hysaw* requires that we *begin* with a presumption that the mere use of such a double fraction was purposeful and that 1/8 reflects the *entire* mineral estate, not just 1/8 of it. Indeed, it would be odd to say "one-half of one-eighth" rather than simply "one-sixteenth" if all that was intended by "one-half of one-eighth" *was* 1/16. Our analysis in *Hysaw* thus warrants the use of a rebuttable presumption that the term 1/8 in a double fraction in mineral instruments of this era refers to the entire mineral estate. Because there is "little explanation" for using a double fraction for any other purpose, this presumption reflects historical usage and common sense.
>
> At the same time, *Hysaw* clarifies that the presumption is readily and genuinely rebuttable. As we made clear in that opinion, every contract, deed, or will is free to manifest a different intent and to define terms in different ways.

*Van Dyke*, 668 S.W.3d at 364 (internal citations omitted). The reasoning behind this rebuttable presumption flows from the "estate-misconception theory" and the historical meaning of a 1/8 royalty. *Id.* at 363. Again, the Texas Supreme Court succinctly explained how these principles result in the presumption that a double-fraction royalty involving a 1/8 mineral royalty conveys a fraction of the entire mineral estate, not the mathematical result of multiplying the two fractions:

> The estate-misconception theory reflects the prevalent (but, as it turns out, mistaken) belief that, in entering into an oil-and-gas lease, a lessor retained only a 1/8 interest in the minerals rather than the *entire* mineral estate in fee simple determinable with the possibility of reverter of the entire estate. Therefore, for many years, lessors would refer to what they *thought* reflected their entire interest in the "mineral estate" with a simple term they understood to convey the same message: "1/8." This widespread and mistaken belief ran rampant in instruments of this time involving the reservation or conveyance of a mineral interest—so much so that courts have taken judicial notice of this widespread phenomenon. Therefore, the very use of 1/8 in a double fraction "should be considered patent evidence that the parties were functioning under

6

the estate misconception." We made this point in *Hysaw*, citing "commentators" who have observed that "there is 'little explanation' for the use of double fractions to express a fixed interest absent a misunderstanding about the grantor's retained ownership interest or use of 1/8 as a proxy for the customary royalty."

The second rationale—the special meaning that 1/8 acquired in the standard-royalty context—provides an additional objective indication of what parties meant by using 1/8 within a double fraction. We said in *Hysaw* that we had "no doubt" that "[t]he near ubiquitous nature of the 1/8 royalty—dubbed by some as 'the legacy of the 1/8 royalty' or 'historical standardization'"—is something that "influenced the language used to describe the quantum of royalty in conveyances of a certain vintage." This prevalent belief and confusion resulted in parties mistakenly assuming the landowner's royalty would *always* be 1/8. Therefore, parties would use the term 1/8 as a placeholder for future royalties *generally*—without anyone understanding that reference to set an arithmetical value. Once again, this pervasive misunderstanding long ago led us to take judicial notice in this specific context of double-fraction royalties.

Working in tandem, these widely recognized principles provide objective indications about what the parties to this deed meant by deploying a double fraction. At that time, the fraction 1/8 had various meanings that linked to the landowner's conception of the entirety of the estate. We are, frankly, not aware of double fractions including 1/8 that were aimed at simple multiplication rather than referencing the mineral estate as a whole. But that does not mean it could not have happened.

*Van Dyke*, 668 S.W.3d at 363-64 (internal citations omitted). Thus, Texas law clearly provides that when interpreting an antiquated deed that contains a double fraction, courts are to apply a rebuttable presumption that the fraction 1/8 represents the entire interest in the mineral estate rather than simply 1/8 of the mineral estate. As a result, the double fraction "1/64 of the landowner's 1/8 royalty interest" carries

7

a rebuttable presumption that it means 1/64 of the landowner's total royalty interest, (known as a floating royalty), as opposed to a 1/512 fixed royalty (the mathematical result of multiplying a 1/64 royalty x a 1/8 royalty).

The six deeds at issue in Remnant's and Hart's Motions for Summary Judgment each assign a particular fraction of "the landowner's one-eighth royalty interest." Absent some textual basis in the documents that serves to rebut the presumption that the assignment conveys a fraction of the entire mineral interest, the deeds are all properly interpreted to assign a floating royalty, or a fraction of the entire mineral estate. *Van Dyke*, 668 at 359 ("If the text itself has provisions—whether express or structural—illustrating that a double fraction was in fact used as nothing more than a double fraction, the presumption will be rebutted."). As was the case in *Van Dyke*, nothing in the text of the six deeds rebuts the presumption that the deeds assign a floating royalty (1/64 of the landowner's mineral estate) rather than a fixed royalty (1/64 x 1/8 = 1/512 of the landowner's mineral estate). Therefore, the presumption has not been rebutted and the Court interprets the six deeds attached to Remnant's Motion for Summary Judgment to assign a floating royalty. No Interpleader-Defendant who has appeared in this case disputes this legal interpretation of the six deeds at issue in Remnant's and Hart's Motions for Summary Judgment.

Furthermore, fact issues prevent the entry of summary judgment regarding all other issues presented in the Motions. Because fact issues remain, the Court cannot determine at this stage the percentages of royalty interest owned by each Interpleader-Defendant. At this stage, the Court may only provide a legal interpretation of the contract.

## IV. Conclusion and Recommendation.

For the reasons stated above, the Court RECOMMENDS that Remnant's and Hart's Motions for Summary Judgment (ECF 105; ECF 112) be GRANTED IN PART and DENIED IN PART. Specifically, the Court RECOMMENDS the Motions be GRANTED to the extent they seek a legal interpretation that each of the six deeds attached to Remnant's Motion for Summary Judgment (and as corrected in ECF 125) conveys a "floating" royalty interest as opposed to a "fixed" royalty interest. The Court further

RECOMMENDS that all other relief requested in the Motions for Summary Judgment be DENIED. The Court further

RECOMMENDS entry of an Order similar in substance to the Order attached hereto as Exhibit A.

The Clerk of the Court shall send copies of the memorandum and recommendation to the respective parties, who will then have fourteen days to file written objections, pursuant to 28 U.S.C. § 636(b)(1)(C). Failure to file written

objections within the time period provided will bar an aggrieved party from attacking the factual findings and legal conclusions on appeal. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc), superseded by statute on other grounds.

Signed on July 15, 2024, at Houston, Texas.

Christina A. Bryan
United States Magistrate Judge