United States District Court
Southern District of Texas

**ENTERED**

May 19, 2026

Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| SADDLEBACK EXPLORATION, LLC | § | |
| *Interpleader-Plaintiff,* | § | |
| | § | |
| v. | § | CIVIL ACTION No. 4:23-CV-03091 |
| | § | |
| BARBARA BRUNELL ET AL., | § | |
| *Interpleader-Defendants.* | § | |

## <u>MEMORANDUM AND RECOMMENDATION</u>

On March 19, 2026, the District Judge adopted the Magistrate Judge's Memorandum and Recommendation (ECF 160) and dismissed Interpleader-Plaintiff Saddleback Exploration, LLC's ("Saddleback") Interpleader Complaint as moot.[1] ECF 161. The Order of Adoption allowed Saddleback to move for attorney's fees. *Id.* Now pending before the Court is Interpleader-Plaintiff's Motion for Attorney's Fees. ECF 162. Saddleback seeks $52,707.50 in fees and $23,048.96 in costs. *Id.* ¶¶ 13-14. Having considered the Parties' briefs, the record, and the applicable law, the Court RECOMMENDS the Motion be GRANTED IN PART AND DENIED IN PART.

---

[1] The District Judge referred this case to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(A) and (B), the Cost and Delay Reduction Plan under the Civil Justice Reform Act, and Federal Rule of Civil Procedure 72. ECF 100.

## I.    Factual and Procedural Background.

This interpleader action arises out of a dispute over production royalty interests on a well Saddleback operates in Winkler County, Texas. The dispute began when Interpleader-Defendant Remnant Assets challenged the calculation of royalty interests. ECF 160 at 5; ECF 162 ¶¶ 2-7. The interpleader initially involved hundreds of Interpleader-Defendants (ECF 7 ¶¶ 6-156), but many failed to appear or were dismissed. ECF 107; ECF 143. In July 2024, the Court granted in part two claimants' motions for summary judgment, finding that some of the deeds at issue conveyed floating, rather than fixed, royalty interests. ECF 128; ECF 130. In light of that ruling, Saddleback sought a new title opinion which it distributed to the parties in March 2025. ECF 137. Eventually, Remnant Assets disclaimed any interest in the property and was dismissed from the case. ECF 149; ECF 151. The dismissal dispensed with the only party who challenged the distribution of the royalty funds, mooting the underlying dispute such that no live controversy remained. ECF 160. The District Judge then dismissed the complaint. ECF 161.

On March 19, 2026, Saddleback filed its Motion for Attorney's Fees. ECF 162. According to the Local Rules, the remaining Interpleader-Defendants had through April 23, 2026 to file their responses. *See* S.D. TEX. LOC. R. 7.3, 7.4.

2

Interpleader-Defendants[2] Juanita Jean Howard; Lorraine Maxine Howard; and James N. Howard and Patricia J. Howard, as Trustees of the ML Howard Legacy Trust, (the "Responding Defendants") filed an untimely Response on April 24, 2026. ECF 163.   Saddleback filed a Reply addressing the Responding Defendants' substantive arguments but did not object to the untimeliness of the filing.  ECF 164. Therefore, the Court will consider the Response.  *See, e.g.*, *Trevino v. Jimenez*, No. 4:17-CV-1092, 2018 WL 8733112, at *1 n.2 (S.D. Tex. July 11, 2018) (considering a reply filed 10 days late because opposing parties failed to object).

## II.    Legal Standards.

"A district court has the authority to award reasonable attorney's fees [and costs] in interpleader actions." *Rhoades v. Casey*, 196 F.3d 592, 603 (5th Cir. 1999). *See also Murphy v. Travelers Ins. Co.*, 534 F.2d 1155, 1164 (5th Cir. 1976) (noting a stakeholder can receive costs and fees).  A fee award is discretionary and only available if the interpleader-plaintiff is both a disinterested stakeholder and not in substantial controversy with one of the claimants.  *Rhoades*, 196 F.3d at 603.  *See also New York Life Ins. & Annuity Corp. v. Cannatella*, 550 F. App'x 211, 217 (5th Cir. 2013) (applying the *Rhoades* language as two separate requirements).

---

[2] The following Interpleader-Defendants remain in this case: Juanita Jean Howard; Lorraine Maxine Howard; James N. Howard and Patricia J. Howard, as Trustees of the ML Howard Legacy Trust; Grimes 710 LLC; Grimes Texas LLC; Matthews-Link Properties, Ltd.; and Kevin D. Durham and Lynn D. Durham, Jr., as Co-Trustees of the Fredda T. Durham Lifetime Trust; Pecos Bend Royalties, LLLP; White Star Energy, Inc.; Hart Revocable Trust; M&M Minerals, LLC; TK3 Minerals, LLC; Moody Bible Institute of Chicago; and David M. Howard.

Interpleader fee awards "should be modest" and limited to the core stakeholder functions. *Carter Momsen PC v. DJ Collections & Inv. Enter. Corp.*, No. SA-18-CV-00053-XR, 2020 WL 12991144, at *2 (W.D. Tex. May 13, 2020) (cleaned up) (awarding fees in an interpleader action which was then dismissed as moot). *See also* 7 WRIGHT & MILLER'S FEDERAL PRACTICE & PROCEDURE § 1719 (3d ed. 2026) (explaining fee awards to interpleader-plaintiffs compensate them for undertaking the traditional stakeholder functions). Courts consider the following factors when assessing if a fee award is appropriate: "1) whether the case is simple or involved; 2) whether the stakeholder performed any unique services for the claimants or the court; 3) whether the stakeholder acted in good faith and with diligence; 4) whether the services rendered benefited the stakeholder; and 5) whether the claimants improperly protracted the proceedings."[3] *New York Life*, 550 F. App'x at 217.

If a court determines an award of fees is appropriate, the lodestar method is used to determine whether the requested fees are reasonable. *See Transamerica Annuity Serv. Corp. v. Symetra Life Ins. Co.*, No. CV H-16-1426, 2017 WL 3442464, at *4 (S.D. Tex. Aug. 9, 2017) (collecting cases). To calculate the lodestar, the Court multiplies "the number of hours reasonably expended on the litigation by a

---

[3] These are the factors Parties refer to as the Noeller factors, from their use in *Noeller v. Metro. Life Ins. Co.*, 190 F.R.D. 202 (E.D. Tex. 1999). ECF 163; ECF 164.

reasonable hourly rate." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). After calculating the lodestar, the Court must consider whether to modify the award by applying the twelve *Johnson* factors.[4] *Transamerica Annuity*, 2017 WL 3442464, at *6. The fee applicant bears the burden of establishing the award is reasonable. *Hensley*, 461 U.S. at 437.

### III.   Analysis.

#### A. Awarding some Interpleader-Plaintiff fees is appropriate.

##### 1. Saddleback is a disinterested stakeholder who was not in substantial controversy with any claimant.

Fees and costs may only be awarded when an interpleader is successful, meaning that the interpleader-plaintiff is a mere stakeholder who admitted liability, deposited the fund with the court, and has asked to be relieved of any further liability. *Transamerica Annuity*, 2017 WL 3442464, at *3 n.5. A stakeholder is in substantial controversy with a claimant when there are claims between a claimant and the stakeholder or the stakeholder takes a position on an interpleader-defendant's claim. *See United of Omaha Life Ins. Co. v. Womack-Rodriguez*, 461 F. Supp. 3d 455, 471

---

[4] The *Johnson* factors are: (1) the time and labor required; (2) the novelty and difficulty of the issues; (3) the skill required to perform the legal service adequately; (4) the preclusion of other employment by the attorney because he accepted this case; (5) the customary fee for similar work in the community; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *Johnson v. Georgia Highway Exp., Inc.*, 488 F.2d 714, 717–19 (5th Cir. 1974), *abrogated by Blanchard v. Bergeron*, 489 U.S. 87, 109 (1989).

(W.D. Tex. 2020) (explaining a counterclaim constitutes controversy between claimant and stakeholder); *Phillips Petroleum Co. v. Hazlewood*, 534 F.2d 61, 63 (5th Cir. 1976) (explaining a stakeholder is in controversy with a claimant if it takes a position on a claim).

This action was a successful interpleader because Saddleback admitted liability (ECF 7 ¶ 162-65), asked to be discharged from the case and relieved from further liability (*id.* ¶ 169), and deposited the royalty payments with the Court.  ECF 38.  *See also* ECF 150 at 5-6 (explaining interpleader requirements are satisfied). Saddleback represents it never claimed any interest in the royalties and has not been in substantial controversy with any claimant. [5]  ECF 7 ¶ 164; ECF 162 ¶ 10.  The Responding Defendants do not claim otherwise.  ECF 163.   Therefore, Saddleback may be awarded fees and costs in this interpleader action.

## 2.  Equity favors a significant reduction in the scope of fees.

Interpleader fee awards are discretionary and should only be awarded when fair and equitable to do so. *Metro. Life Ins. Co. v. Barretto*, 178 F. Supp. 2d 745, 751 (S.D. Tex. 2001).  As mentioned above, the Court considers the following factors: "1) whether the case is simple or involved; 2) whether the stakeholder

---

[5] Although Hart Revocable Trust pleaded a counterclaim against Saddleback (ECF 35), the counterclaim did not create a substantial controversy because it only sought its interest in the interpleaded royalty payments. *See* ECF 159 at 1 n.1 (explaining that Hart Revocable Trust's counter claim merely seeks the same relief it would be entitled to in the interpleader proceeding).

6

performed any unique services for the claimants or the court; 3) whether the stakeholder acted in good faith and with diligence; 4) whether the services rendered benefited the stakeholder; and 5) whether the claimants improperly protracted the proceedings." *New York Life*, 550 F. App'x at 217.

Interpleader Plaintiff and the Responding Defendants agree that the dispute underlying this interpleader action arose solely because a *single* royalty interest owner, Remnant Assets, claimed its royalty interest percentage should be calculated differently in the wake of the Texas Supreme Court's decision *Van Dyke v. Navigator Group*. *See* ECF 162 ¶ 2-4; ECF 163 at 1-3; *Van Dyke v. Navigator Grp.*, 668 S.W.3d 353 (Tex. 2023) (holding antiquated instruments that use a 1/8 within a double fraction raise a rebuttable presumption that the 1/8 is a term of art referring to the mineral estate). Saddleback represents there was uncertainty over whether the ruling in *Van Dyke* applied to the calculation of Remnant Assets' royalty interests. If Saddleback did not apply *Van Dyke*, it faced litigation from Remnant Assets. If it did apply *Van Dyke*, and necessarily decreased the other interests, it faced litigation from the other royalty holders. In July 2024, the Court ruled on the applicability of *Van Dyke*, providing instruction on how the instruments at issue should be interpreted. ECF 128; ECF 130. As Saddleback indicates in its fee request, this resolved the uncertainty and it reissued a title opinion according to the Court's ruling, which eventually lead to the case being dismissed as moot. ECF 162 ¶ 7.

The Parties do not dispute that Saddleback acted in good faith and with diligence, and they agree that no claimant improperly prolonged the litigation. ECF 162; ECF 163; ECF 164. Rather, the Responding Defendants argue that many of the expenses Saddleback seeks to recover are the routine cost of doing business as a well operator. As an operator, Saddleback had a pre-existing legal obligation to properly calculate and distribute the royalty payments. ECF 163 at 4-6. *See also Great Am. Life Ins. Co. v. Smith*, No. 1-15-CV-076 RP, 2015 WL 13715589, at *3 (W.D. Tex. Apr. 21, 2015) (explaining the routine business expense rule derives refusals to award insurance companies fees because "the resolution of competing claims to the benefits of an insurance policy is in the ordinary course of business for an insurance company"). The Responding Defendants argue that the remaining claimants, none of whom played a role in creating the dispute, should not have their recovery of due, unpaid royalty payments reduced in order to subsidize litigation that benefitted Saddleback. ECF 163 at 4-6

Saddleback claims this was a complex matter given the number of interest holders, and that it provided a unique service by re-determining the royalty interests in light of the Court's ruling. ECF 164 at 2-5. Saddleback admits it benefitted from properly determining the royalty percentages and the termination of the Remnant Assets dispute, but it also asserts the suit provided retroactive and forward-looking certainty for all claimants. *Id.* Specifically, Saddleback notes that while Responding

Defendants may not have spurred on the dispute, their interests are no longer subject to competing claims. *Id.*

Although it is unclear whether courts in this Circuit apply the ordinary business expense rule, the Court agrees with Saddleback that genuine uncertainty caused the multiple liability, not just a routine problem that would be part of its ordinary course of business. *Compare Transamerica Annuity Serv. Corp. v. Symetra Life Ins. Co.*, No. CV H-16-1426, 2017 WL 467970, at *8 (S.D. Tex. Feb. 3, 2017) (noting uncertainty over use of the ordinary business expense rule and explaining the trend in this Circuit is to not apply the rule), *with New York Life Ins. & Annuity Corp. v. Cannatella*, No. CIV.A. 11-1431, 2012 WL 405089, at *3 (E.D. La. Feb. 8, 2012) (applying the ordinary business expense rule and denying fees), *aff'd,* 550 F. App'x 211 (5th Cir. 2013). *See also Mass. Mut. Life Ins. Co. v. Sanders*, 787 F. Supp. 2d 628, 641–42 (S.D. Tex. 2011) (not applying ordinary business expense rule where dispute over insurance payout was a unique, non-routine dispute).

However, once the Court ruled on the instrument construction issue, Saddleback had the guidance it needed to properly construe the deeds and determine the royalty interest percentages. At that point, the controversy was essentially over, as Saddleback and the Responding Defendants both noted. Therefore, any further delay in resolution was of Saddleback's own creation, and it should not be allowed to recover expenses incurred after the first summary judgment ruling, on July 31,

9

2024.  ECF 130.  *See Royal Indem. Co. v. Bates*, 307 F. App'x 801, 806 (5th Cir. 2009) (finding that awarding fees to stakeholder who was responsible for the uncertainty and had ability to resolve controversy was abuse of discretion); *John Hancock Life Ins. Co. (U.S.A.) v. Est. of Wheatley*, No. 21-20508, 2022 WL 4103259, at *4–5 (5th Cir. Sept. 7, 2022) (finding award to stakeholder who was partially responsible for causing dispute and protracting litigation was abuse of discretion because it would reward it for resolving a self-created problem).

Limiting the request to expenses incurred through July 31, 2024 reduces the claimed fees to $35,528.50 and costs to $23,053.64.  ECF 162-1.

### B. Attorney's fees.

The initial estimate of a reasonable fee award is the lodestar, which is calculated by multiplying the reasonable number of hours expended by a reasonable hourly rate.  *Blum v. Stenson*, 465 U.S. 886, 888 (1984).  Saddleback bears the burden of establishing the reasonable hours and hourly rate.  *Hensley*, 461 U.S. at 437.  Saddleback provided the Court with billing records and an affidavit from counsel in support of its request.  ECF 162-1.

### 1.  Determining the number of reasonable hours.

Hours must be reasonable as to the total number of hours claimed and the specific hours claimed. *See Coface N. Am. Ins. Co. v. Woodlands Exp., LLC*, No.

10

4:15-CV-621, 2016 WL 4361462, at *3 (S.D. Tex. Aug. 15, 2016).  Saddleback claimed 100.8 hours expended from June 2023 through July 2024.  ECF 162-1.

### a.  Travis Harvill's hours should be excluded.

To prove a fee request is reasonable, Saddleback must show the rate charged aligns with the prevailing market rates charged by lawyers of comparable skill and experience.  *McClain v. Lufkin Indus., Inc.*, 649 F.3d 374, 381 (5th Cir. 2011).  The hourly rate must be supported by the record—the Court cannot simply rely on its own experience.  *Id.* at 383.

The affidavit of Saddleback's counsel provides Molly Pela's credentials but provides no information on Travis Harvill.  ECF 162-1 at 2-4.  The affidavit merely states: "All other lawyers listed were licensed to practice law in the State of Texas and were a member of the State Bar of Texas in good standing at the time the work was performed."  *Id.* at 3.  This is inadequate to establish Harvill's rate, so his fees cannot be recovered.  The Court therefore excludes the 12.5 hours claimed for Harvill.  *Id.* at 5-6, 16, 21.

### b.  The number of hours should be reduced due to block-billing.

Block billing is a disfavored time-entry method where an attorney logs the total daily time on a case without itemizing specific tasks, making it difficult for courts to determine if the hours are reasonable. *SCA Promotions, Inc. v. Yahoo! Inc.*, No. 3:14-CV-957-O, 2016 WL 8223206, at *10 (N.D. Tex. Nov. 21, 2016), *report*

11

*and recommendation adopted,* No. 3:14-CV-00957-O, 2017 WL 514545 (N.D. Tex. Feb. 8, 2017), *aff'd,* No. 17-10239, 2017 WL 11689639 (5th Cir. Nov. 7, 2017). Courts typically reduce block-billed hours by 20 to 30 percent to account for this defect. *Id.* at *11-12.  The billing records show Saddleback's counsel frequently engaged in block-billing.  *See, e.g.*, ECF 162-1 at 6-7, 9, 10, 12, 14, 16-17. Therefore, the Court should reduce the total hours by 30 percent.

### c. The number of hours should be reduced due to work outside scope of the interpleader.

A fee applicant must exercise billing judgment and exclude hours that are excessive, redundant, or otherwise unnecessary.  *City of Riverside v. Rivera*, 477 U.S. 561, 570 n.4 (1986).  As mentioned above, a stakeholder's fee request should be limited to hours expended fulfilling the core functions of an interpleader-plaintiff in the interest of equity.

The Responding Defendants argue that the hours expended are unsegregated, with stakeholder functions included alongside myriad hours for tasks that serve Saddleback's other business interests.  ECF 163 at 6.  Saddleback does not directly address the segregation issue except to explain that none of the claimed hours include those expended on the title opinions.  ECF 164.

Saddleback's long-term relationship with its counsel outside of this matter is no excuse for including clearly tangential or unrelated hours in its fee request.  ECF 162-1 at 3.  The fee request contains hours for: answering client questions related to

12

suspending the royalty payments months after the action began (ECF 162-1 at 14); discussions of litigation related to *other wells* (*id.* at 12, 14); and, perhaps most egregiously, discussing the implications of this action for *potential buyers* (*id.* at 17). Outside of these clearly unrecoverable examples, many of the entries are too vague for the Court to determine whether they relate to the core interpleader functions, even though some clearly do. *See, e.g., id.* at 6. Therefore, the Court should reduce the hours by 50 percent considering the extreme lack of billing judgment. *See Gurule v. Land Guardian, Inc.*, No. 4:15-CV-03487, 2017 WL 6761821, at *4 (S.D. Tex. Oct. 24, 2017) (noting courts reduce awards between 10 and 50 percent for lack of billing judgment), *aff'd,* 912 F.3d 252 (5th Cir. 2018)

### d. The number of hours should be reduced due to top-heavy staffing on basic assignments.

Having a partner complete work suited to associates or paralegals and then bill for the work at the partner's rate demonstrates lack of billing judgment. *Transamerica Annuity*, 2017 WL 3442464, at *11. Saddleback's counsel, a partner at her firm (ECF 162-1 at 2), billed hours at her normal rate for basic tasks, such as researching the registered agents of corporate entity claimants. *Id.* at 7, 10. This work either should have been completed by a paralegal or associate or been billed at a reduced rate. Therefore, the Court will reduce the hours by an additional five percent.

The total reasonable hours are 13.25, consisting of Plaintiff's hours through July 31, 2024 less Harvill's 12.5 hours and the application of an 85 percent reduction.

### 2. Determining the reasonable rate.

The reasonable hourly rate is determined by the prevailing market rate in the relevant community. *Blum*, 465 U.S. at 895. The relevant community is the judicial district where the litigation occurred. *See Tollett v. City of Kemah*, 285 F.3d 357, 368 (5th Cir. 2002).

At the beginning of this lawsuit, Saddleback's counsel, Molly Pela, billed at a rate of $350 per hour. ECF 162-1 at 5-20. Pela's rate jumped to $535 per hour in June 2024. *Id.* at 21. Pela's affidavit states she was a partner at the same firm from June 2023 to December 2025 and that she has practiced law since 2004. *Id.* at 2-3.

In this District, $350 per hour is a reasonable rate for a partner with Pela's experience. *See Coface*, 2016 WL 4361462, at *4 (finding rate of $365 per hour reasonable for a partner with 12 years of experience in an interpleader action). The affidavit fails to provide an explanation for the increase in her rate. Without more information, the Court cannot discern a basis for the change, and $185 is a drastic rate adjustment for one year. Therefore, the Court will calculate the lodestar using the $350 rate. *See HCC Aviation Ins. Grp., Inc. v. Emps. Reinsurance Corp.*, No. 3:05-CV-744BH, 2008 WL 850419, at *10 (N.D. Tex. Mar. 21, 2008) (awarding fees at the lower, prior rate where request offered no explanation for $55 increase).

14

### 3. No further adjustment of the lodestar is necessary.

The Court arrives at a lodestar of $4,637.50 by multiply the reasonable hours expended (13.25) by the reasonable rate ($350). Neither party argued for an adjustment of the lodestar according to the *Johnson* factors, and the Court finds that further alteration is not necessary given the above adjustments.

### C. Costs.

As in other federal court proceedings, 28 U.S.C. § 1920 governs the Court's award of costs to a stakeholder in an interpleader action.[6] *Provident Life & Accident Ins. Co. v. Cleveland*, No. 4:09-CV-643-Y, 2011 WL 13177713, at *2 n.3 (N.D. Tex. Feb. 14, 2011). "The court may only tax as costs the expenses expressly listed in 28 U.S.C. § 1920." *Hager v. Chilli's Bar & Grill*, No. 4:19-CV-0595, 2021 WL 2188683, at *1 (S.D. Tex. May 10, 2021), *report and recommendation adopted,* No. 4:19-CV-595, 2021 WL 2187942 (S.D. Tex. May 28, 2021). The parameters of Section 1920 must be strictly construed. *Mota v. Univ. of Texas Houston Health Sci. Ctr.*, 261 F.3d 512, 530 (5th Cir. 2001). The Court must determine whether claimed costs are allowable under Section 1920 even absent objections. *Firth v. Don McGill*

---

[6] Allowable costs under § 1920 are: (1) Fees of the clerk and marshal; (2) Fees for printed or electronically recorded transcripts necessarily obtained for use in the case; (3) Fees and disbursements for printing and witnesses; (4) Fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case; (5) Docket fees under section 1923 of this title;(6) Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title.

*of W. Houston, Ltd.*, No. CIV.A. H-04-0659, 2006 WL 846377, at \*8 (S.D. Tex. Mar. 28, 2006), *aff'd sub nom. Firth v. McGill*, 233 F. App'x 346 (5th Cir. 2007).

Saddleback claims $23,053.64 in costs for the period until the end of July 2024. These costs include: domestic service of process, $12,590 (*id.* at 10, 13-14, 18); international service of process, $2,960.75 (*id.* at 10); service by publication in the Winkler County newspaper, $7,011.90 (*id.* at 13); research costs for identifying registered agents, $88.99 (*id.* at 8, 10); and the filing fee, $402 (ECF 162-1 at 8). The Responding Defendants noted the service expenses are the result of the complex and varied history of the mineral interests in question, the management of which is the responsibility of Saddleback, not the claimants. ECF 163 at 6.

### 1. The service of process costs are not recoverable.

Costs for private process servers are not recoverable under Section 1920 absent exceptional circumstances. *Marmillion v. Am. Int'l Ins. Co.*, 381 F. App'x 421, 431 (5th Cir. 2010). When a party fails to argue or demonstrate exceptional circumstances exist to warrant the award of service costs, a court may deny the request. *Id. See also Bridge v. Tech. Partners FZ, LLC*, No. 3:11-CV-2417-L-BK, 2016 WL 859348, at \*2 (N.D. Tex. Jan. 15, 2016) (granting costs for private service of process due to exceptional circumstances where plaintiff explained in great detail the difficulty it had serving defendants internationally), *report and recommendation adopted,* No. 3:11-CV-2417-L, 2016 WL 728509 (N.D. Tex. Feb. 24, 2016).

The costs of effecting domestic ($12,590) and international ($2,960.75) service of process should not be awarded because Saddleback has failed to argue exceptional circumstances. Saddleback cited the numerous claimants as a reason for the large amount of costs, but it failed to explain why this constituted an exceptional circumstance. The Court does not believe the large number of claimants or the complexities of service are exceptional in the context of litigation over 100-year-old mineral interests, as noted by the Responding Defendants.

## 2. The Court should not award costs for publication by service.

As a decision in the Northern District of Texas noted, "there is scant authority in this Circuit that addresses whether fees associated with service by publication are recoverable . . . [and] there is scant authority on the question at all." *Espinoza v. Humphries*, No. 19-CV-1805-E-BK, 2021 WL 2690880, at *7 (N.D. Tex. May 21, 2021) (relying on out of Circuit caselaw to determine the costs were recoverable), *report and recommendation adopted,* No. 19-CV-1805-E-BK, 2021 WL 2688595 (N.D. Tex. June 30, 2021), *vacated and remanded on other grounds,* 44 F.4th 275 (5th Cir. 2022). Given that Section 1920 must be strictly construed, recovery of costs associated with service by publication should be disallowed absent exceptional circumstances. *See Miller v. Cartel*, 627 F. Supp. 3d 1043, 1056 (D.N.D. 2022) (explaining expenses for service by publication are not recoverable as costs due to the Eighth Circuit's strict construction of Section 1920 but awarding them as

17

attorney's fees in the interest of equity because of the particular circumstances of the case).

Saddleback failed to argue or explain exceptional circumstances that might allow for an award of publication costs. Although the District Judge allowed Saddleback to effect service on certain potential claimants by publication (ECF 14), the Motion for Substituted Service did not turn on the necessity or efficiency of service by publication but on the fact it was permitted under Texas law. ECF 10; FED. R. CIV. P. 4(e)(1) (allowing service in accordance with the law of the state where the district court is located). There is no indication that exigent circumstances *required* service by publication. Therefore, Saddleback should not recover the $7,011.90 in costs claimed for service by publication.

### 3. The research costs are not recoverable.

Costs for research are not recoverable. *Cashman Equip. Corp. v. Smith Marine Towing Corp.*, No. CV 12-945, 2013 WL 12229038, at *12 (E.D. La. June 27, 2013) (collecting cases), *report and recommendation adopted,* No. CV 12-945, 2013 WL 12228976 (E.D. La. July 12, 2013). Therefore, Saddleback should not recover the $88.99 in costs claimed for registered agent research.

### 4. The filing fee is recoverable.

Filing fees are expressly recoverable, so Saddleback should be awarded the $402 it claims for the interpleader-complaint filing fee. 28 U.S.C. § 1920(1).

18

## IV.    Conclusion and Recommendation.

For the reasons stated above, the Court RECOMMENDS that Interpleader-Plaintiff's Motion for Attorney's Fees (ECF 162) be GRANTED IN PART and Interpleader-Plaintiff be AWARDED $4,637.50 in fees $402 in costs.

This award, $5039.5 in total, represents approximately 2.4 percent of the $212,166.75 paid into the Court's registry. *See Certain Underwriters at Lloyd's London Subscribing to Certificate No. WHP000080728005 v. Moran*, No. SA-10-CV-0529 NN, 2011 WL 3235469, at *1 (W.D. Tex. July 27, 2011) (denying as unreasonable a request equivalent to five percent of the interpleader fund); *Great Am. Life Ins. Co. v. Smith*, No. 1-15-CV-076 RP, 2015 WL 13715589, at *3 (W.D. Tex. Apr. 21, 2015) (noting an award constituting 10 percent of the interpleader fund would be unreasonable).

The Clerk of the Court shall send copies of the memorandum and recommendation to the respective parties, who will then have fourteen days to file written objections, pursuant to 28 U.S.C. § 636(b)(1)(C).  Failure to file written objections within the time period provided will bar an aggrieved party from attacking the factual findings and legal conclusions on appeal. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc), superseded by statute on other grounds.

19

Signed on May 19, 2026, at Houston, Texas.

Christina A. Bryan
United States Magistrate Judge